**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| **PATRICK DOYLE, DANIEL HOULIHAN, JOHN NOLAN, ROBERT OLSON, MICHAEL PADALINO, JOHN PIGOTT, EUSEBIO RAZO, VERONICA RODRIGUEZ, MICHAEL ROMAN, RICHARD SOTO, and CAROL WEINGART,** | |
| **Plaintiffs,** | **Case No. 12 C 6377** |
| **v.** | **Hon. Harry D. Leinenweber** |
| **THE CITY OF CHICAGO, BRIAN THOMPSON, Individually, TERRY HILLARD, Individually, and UNKNOWN AND UNNAMED DEFENDANTS,** | |
| **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 35) and Plaintiffs' Motion to Compel (ECF No. 52). For the reasons stated herein, Defendants' Motion is denied, and Plaintiff's Motion is granted in part and denied in part.

## I. BACKGROUND

Defendant City of Chicago (the "City") employed Plaintiff police officers as Security Specialists in Unit 542. Security Specialists are assigned to provide security to the Mayor of Chicago and other dignitaries in the City. The City employed at least twenty-two Security Specialists. Upon becoming Security

Specialists, Plaintiffs received increased benefits and a pay raise. Plaintiffs are Caucasian or Hispanic. Defendant Brian Thompson ("Thompson") was the Unit Commander of the Security Specialists assigned to Unit 542, and Terry Hillard ("Hillard") was the Interim Superintendent of the City of Chicago Policy Department. Both Thompson and Hillard are African-American.

On February 22, 2011, Rahm Emanuel ("Emanuel") was elected Mayor of Chicago. Plaintiffs allege that in late April or early May 2011, Hillard, Thompson and unknown individuals (collectively, the "Individual Defendants") transferred several police officers who were not Security Specialists to Mayor-Elect Emanuel and began treating them as Security Specialists. The Individual Defendants did not promote them officially to that rank, but instead allowed them to "act up" into the Security Specialist position. Plaintiffs allege that the officers that the Individual Defendants allowed to "act up" as Security Specialists had volunteered to work security for Emanuel when he was a mayoral candidate or were involved politically in his campaign. They claim that the Individual Defendants chose these officers to "act up" as Security Specialists because of their political affiliation with Emanuel. Plaintiffs allege that allowing employees to "act up" in this manner is disfavored, and that there are restrictions on such practices.

Plaintiffs claim that the Individual Defendants failed to follow these policies limiting "acting up" because they intended to

replace Plaintiffs for political reasons. In addition, Plaintiff Pigott asked Thompson what factors Thompson would use to determine which officers stayed on as Security Specialists upon Emanuel's inauguration. Plaintiffs claim Thompson responded that "the color of your skin is your sin." Sec. Am. Compl. ¶ 44.

On May 13, 2011, the Individual Defendants removed Plaintiffs Doyle, Houlihan, Padalino, Pigott, Razo, Rodriguez, Soto and Weingart from their Security Specialist positions without explanation. When these Plaintiffs were removed, they were demoted in title and rank and received a reduction in pay and benefits. Plaintiffs allege Individual Defendants did not remove any African-American Security Specialists despite the fact that Plaintiffs has more seniority.

On May 16, 2011, Emanuel was sworn into office. That same day, the Individual Defendants demoted Doyle, Houlihan, Padalino, Pigott, Razo, Rodriguez, Soto and Weingart and reassigned them to the training academy. These officers attended retraining for several weeks, and then were reassigned to work as police officers in various districts. Plaintiffs claim the Individual Defendants replaced them with officers who were affiliated politically with Emanuel.

Plaintiffs Nolan, Olson and Roman retained their rank of Security Specialists on May 16, 2011, but were reassigned to work security for former Mayor Richard M. Daley. Plaintiffs claim that

the Individual Defendants knew that Nolan, Olson and Roman were not affiliated with Mayor Emanuel. These Plaintiffs worked on Mayor Daley's security detail until September 15, 2011, when the Individual Defendants reassigned them to the training academy for retraining. On October 21, 2011, Defendants issued a personnel order officially removing Nolan, Olson and Roman from their Security Specialist assignments. These three Plaintiffs were also demoted in title and rank and had their pay and benefits decreased. Plaintiffs claim that the Individual Defendants knew that the officers who replaced these three Plaintiffs were affiliated politically with Mayor Emanuel.

Plaintiffs filed this suit against The City and Thompson on August 13, 2012. On August 16, 2012, The City issued a statement indicating that all decisions relating to Emanuel's security detail were made by Hillard while he was interim police superintendent. Hillard also issued a statement confirming that he was involved in the selection of the replacement Security Specialists. Plaintiffs have amended their Complaint twice since filing, adding Hillard as a Defendant and naming "Unknown and Unnamed Individuals" as placeholder Defendants in the process. Plaintiffs Second Amended Complaint alleges four causes of action. Count I alleges violation of the *Shakman* Decrees against the City. Count II alleges violation of Plaintiffs' First Amendment rights pursuant to 42 U.S.C. § 1983 by the Individual Defendants. Count III alleges

- 4 -

racial discrimination in violation of 42 U.S.C. § 1981 against the Individual Defendants. Count IV alleges racial discrimination against the City in violation of Title VII. Defendants now move to dismiss all counts.

## II.  <u>ANALYSIS</u>

### A.  Defendant's Motion to Dismiss (ECF No. 35)

In ruling on a motion to dismiss under Rule 12(b)(6), courts accept as true all of the plaintiff's well-pleaded factual allegations and any inferences reasonably drawn from them. *Chi. Police Sergeants Ass'n v. City of Chicago*, No. 08-CV-4214, 2011 U.S. Dist. LEXIS 72424 at *7 (N.D. Ill. July 6, 2011). To survive a motion to dismiss, the complaint must comply with Rule 8(a) by providing a short plain statement of the claim showing that the pleader is entitled to relief while providing defendants fair notice of what the claim is and the grounds upon which it rests. *Id.* The allegations must be sufficient to raise the possibility of relief above the "speculative level." *Id.* at *8.

Rule 12(b)(1) requires dismissal of any claim over which the federal court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). In reviewing a motion challenging subject matter jurisdiction, the district court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter

jurisdiction exists. *Maxwell v. County of Cook*, No. 10 CV 00320, 2011 U.S. Dist. LEXIS 29130 at *8 (N.D. Ill. Feb. 1, 2011).

### 1. Count I – Shakman (City of Chicago)

Plaintiffs' first cause of action stems from the results of longstanding litigation in this District that began with *Shakman v. Democratic Org. of Cook County,* 310 F.Supp. 1398 (N.D. Ill. 1969). This litigation led to a consent judgment (the "1972 Consent Decree") that prohibited defendants from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of government employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor." *See O'Sullivan v. City of Chicago,* 396 F.3d 843, 848 (7th Cir. 2005) (providing history of *Shakman* litigation). In 1983, a second consent judgment was entered (the "1983 Consent Decree") that enjoined the City from "conditioning, basing or affecting [] employment with the City of Chicago on political reasons or factors while maintaining the ability of the elected officials of the City lawfully to establish, manage and direct the policies and affairs of the City." *Id.* The 1972 Consent Decree remained in effect, and the district court retained jurisdiction to ensure compliance with the two decrees. *Id.* at 849.

Defendants argue that Plaintiffs' *Shakman* claim must fail for three reasons. First, they claim Plaintiffs do not have standing to assert a *Shakman* claim. Second, even if Plaintiffs do have

standing, they have not pled sufficiently a cause of action under *Shakman*. Third, five of the Plaintiffs are time barred from asserting a *Shakman* claim.

### a. Standing

To have standing to bring a claim under the *Shakman* Decrees, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Everett v. Cook County,* 704 F.Supp.2d 794, 804 (N.D. Ill. 2010) (quoting *Plotkin v. Ryan,* 239 F.3d 882, 884 (7th Cir. 2001)). Plaintiffs meet these standing requirements. First, they allege a personal injury - their demotion from being Security Specialists. Plaintiffs claim their demotions involved their title, rank, pay and benefits all being decreased. Second, Plaintiffs allege that this injury was traceable to Defendants' unlawful conduct. Plaintiffs claim that they were replaced by other officers who were allowed improperly to "act up" as Security Specialists because they were affiliated politically with Mayor Emanuel. Plaintiffs had no such affiliation. Third, Plaintiffs' injuries would be redressed by their requested relief, which includes compensatory damages. Thus, Plaintiffs' have standing to assert their *Shakman* claim. *See Everett*, 704 F.Supp.2d at 804.

Despite this, Defendants argue that Plaintiffs lack standing based on the language of the applicable City Hiring Plan. Defendants first argue that the "acting up" of officers to the

Security Specialist positions and Plaintiffs' reassignments from that position "are separate and distinct." Defs.' Mem. in Support of Mot. to Dismiss at 4, ECF No. 36. Defendants claim that, even if Plaintiffs' allegations regarding officers being allowed improperly to "act up" are true, they suffered no legal injury from that "acting up" process alone.

Defendants then argue that, even if Plaintiffs' demotions were influenced by political factors, they are not actionable because they did not violate the applicable City Hiring Plan that was approved and entered by the Court in the *Shakman* litigation. Defendants point out specifically that the Chicago Police Department Notice, D.N.07-47, referenced in Plaintiffs' Second Amended Complaint states that political factors cannot be considered when selecting an officer assigned as a Security Specialist, but there is no similar prohibition on considering political factors in the removal of a Security Specialist. *See Id.* Ex. A, ECF No. 36-2. Similarly, the City Hiring Plan entered by agreement in *Shakman* on June 29, 2011 which would apply to the September 15, 2011 reassignments provides that "[t]he hiring department or official must not . . . take into account Political Reasons or Factors or other Improper considerations when evaluating or selecting a candidate" for the Security Specialist position. *Id.* Ex. C. But no such prohibition on political affiliation is discussed with respect to the removal of Security Specialists. *Id.*

The Court disagrees with both of Defendants' contentions. First, it does not view Plaintiffs' "acting up" allegations as being separate from Plaintiffs' demotion allegations. A fair reading of the Second Amended Complaint is that the two sets of allegations relate to a single larger scheme of improper conduct. Plaintiffs are alleging that the Defendants replaced Plaintiffs with officers who were affiliated politically with Mayor Emanuel. *See, e.g.,* Sec. Am. Compl. ¶ 40 ("The Individual Defendants failed to follow the relevant policies and procedures for the 'acting up' Security Specialists because they intended to replace the Plaintiffs with the 'acting up' Security Specialists for political reasons."); *id.* ¶ 47 ("On or about May 16, 2011, the Individual Defendants replaced Plaintiffs . . . with police officers who had either volunteered for the Rahm Emanuel mayoral campaign or had a political connection to the Rahm Emanuel campaign."). Thus, the alleged improper "acting up" of some officers and the demotion of the Plaintiffs should not be viewed as separate occurrences. As such, Plaintiffs would be, in fact, harmed by the other officers "acting up."

Second, the Court is unconvinced that the Hiring Plan and related documents bar Plaintiffs from bringing suit. Defendants cite no authority for the proposition that for Plaintiffs to have standing to bring a *Shakman* claim, there must be an explicit violation of the City's Hiring Plan. Under the 1973 *Shakman*

*Decree*, the City is enjoined from directly or indirectly "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor." *O'Sullivan,* 396 F.3d at 847. Plaintiffs are claiming a violation that fits squarely into this prohibition – they claim they were demoted and replaced because of political affiliation. That the court-approved Hiring Plan fails to restate explicitly this prohibition with respect to the removal of Security Specialists should not be a bar to Plaintiffs' claims, particularly when the plan clearly acknowledges elsewhere that such political affiliations should not be considered in the evaluation and hiring of a Security Specialist. For these reasons, the Court finds that Plaintiffs do have standing to assert a *Shakman* claim against the City. Defendants' Motion to Dismiss Plaintiffs' *Shakman* claim pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is denied.

### b. Plaintiffs' Shakman Claim is Pled Adequately

"To state a claim under the *Shakman* Decree, a plaintiff must establish that a political reason or factor was the cause of the complained decision." *Chi. Police Sergeants Ass'n*, 2011 U.S. Dist. LEXIS 72424 at *9. Defendants argue that Plaintiffs' Complaint is conclusory and missing key facts. The Court disagrees. Plaintiffs allege clearly that their lack of political affiliation with Mayor

Emanuel led to them being demoted and replaced by officers who were affiliated with Mayor Emanuel. These allegations are not conclusory, or a mere recitation of the elements of a *Shakman* claim. Plaintiffs allege, step-by-step, facts describing the election of Mayor Emanuel, the "acting up" of Emanuel supporters as Security Specialists, and the reassignments and demotions of two groups of Plaintiffs. Plaintiffs also allege that Defendants' actions were taken because they knew Plaintiffs were not affiliated with Mayor Emanuel. These allegations are sufficient to give Defendants fair notice of the nature of Plaintiffs' claims. The level of detail Defendants demand, such as identifying the police officers who "acted up" and those who remained in their positions as Security Specialists, is simply not required at the pleading stage.

### c. *Statute of Limitations*

Defendants argue that the *Shakman* claims of five Plaintiffs (Doyle, Houlihan, Nolan, Razo and Weingart) are time-barred. Neither party disputes that a complaint alleging a *Shakman* violation must be filed within 180 days of the alleged discriminatory act. *Id.* at *9. The limitations period begins to run when a plaintiff discovers an adverse employment action, but can be subject to equitable tolling doctrines. *See Turner v. City of Chi.*, No. 06 C 4786, 2007 U.S. Dist. LEXIS 15655 at *4 (N.D. Ill. Mar. 5, 2007). Defendants claim that Doyle, Houlihan, Razo

and Weingart waited over a year to file their *Shakman* claims, and Nolan waited nearly a year.

A plaintiff's failure to adhere to a statute of limitations is an affirmative defense and therefore generally is not amenable to dismissal at the complaint stage. *Chi. Police Sergeants Ass'n,* 2011 U.S. Dist. LEXIS 72424 at *10. Dismissal on statute of limitations grounds is only appropriate where a plaintiff "pleads herself out of court by establishing that a defendant is entitled to a limitations defense." *Id.* at *10-11. However, a complaint need not contain any information about defenses and may not be dismissed for that omission. *Turner,* 2007 U.S. Dist. LEXIS 15655 at *5. "At this stage, 'the only question is whether there is *any* set of facts that, if proven, would establish a defense to the statute of limitations.'" *Id.* (quoting *Clark v. City of Braidwood,* 318 F.3d 764, 768 (7th Cir. 2003)).

While Plaintiffs allege the dates on which they were demoted, they do not allege when they realized that the demotions were unlawful. It is thus possible that, despite their best efforts, Plaintiffs did not discover the demotions were unlawful until later. As such, their allegations do not establish unequivocally that their *Shakman* claims are untimely and that they have pleaded themselves out of court. *See id.* at *4-6 (denying City's Motion to Dismiss plaintiff's *Shakman* claim based on unlawful failure to promote when complaint did not indicate when plaintiff discovered

the promotions were unlawful). Defendants' Motion to Dismiss based on untimeliness is thus denied.

### 2. Count II - § 1983 (Individual Defendants)

To state a claim under § 1983 based on political affiliation, a plaintiff must allege facts that demonstrate (1) that their conduct was constitutionally protected; (2) that they suffered an actionable deprivation; and (3) that the protected conduct was the but for cause of the employer's actions. *See Gunville v. Walker,* 583 F.3d 979, 984, n.1 (7th Cir. 2009). Individual capacity suits seek to impose personal liability on government officials for actions taken under color of state law. *Wells v. Nuwayhid,* No. 96 C 4456, 1996 U.S. Dist. LEXIS 17541 at *3 (N.D. Ill. Nov. 13, 1996). To state a claim under § 1983 against a defendant in their individual capacity, plaintiffs must allege that the defendant was involved personally in the deprivation of their constitutional rights. *Id.*

Plaintiffs meet these requirements. "It is well established that hiring, firing or transferring government employees based on political motivation violates the First Amendment, with certain exceptions for policy-making positions and for employees having a confidential relationship with a superior." *Hall v. Babb,* 389 F.3d 758, 762 (7th Cir. 2004). It is also undisputed that political non-affiliation is a right protected under the First Amendment. *Hermes v. Hein*, 742 F.2d 350, 354 n.3 (7th Cir. 2004). The firing

- 13 -

or demotion of an employee based on party affiliation violates the First Amendment. *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). Plaintiffs allege that they lacked political affiliation with Mayor Emanuel, and political affiliation or non-affiliation is protected by the First Amendment. *See, e.g.,* Sec. Am. Compl. ¶¶ 48, 50, 97. They allege that the Individual Defendants, including Hillard and Thompson, demoted Plaintiffs from their positions as Security Specialists. *Id.* ¶¶ 48, 54, 97. They also allege that the Individual Defendants knew that the officers replacing Plaintiffs were affiliated with Mayor Emanuel, and knew that Plaintiffs were not. *See, e.g., Id.* ¶¶ 48, 50, 56. Finally, Plaintiffs allege that their demotion was caused by their non-affiliation with Mayor Emanuel. *See, e.g.,* ¶ 97. Plaintiffs thus allege that Hillard and Thompson were involved personally in the demotions. In addition, they also allege that the City issued a statement that decisions relating to Mayor Emanuel's security detail were made by Hillard, and that Hillard confirmed that he was involved in the selection of replacement Security Specialists. *Id.* ¶¶ 59-60. Together, these allegations are sufficient to allege that Hillard and Thompson were involved personally in the deprivation of Plaintiffs' constitutional rights.

Defendants, however, claim that Plaintiffs cannot state a claim under § 1983 because Security Specialists are exempt from the First Amendment's protection against patronage dismissals. They

base this argument on Plaintiff's allegation that Security Specialists are "assigned to provide security to the Mayor of the City of Chicago and other dignitaries in the City." Sec. Am. Compl. ¶ 22. Defendants cite no case finding that Security Specialists fall into the exception, but instead cite *Meeks v. Grimes*, 779 F.2d 417 (7th Cir. 1985), as support. That case, however, undercuts their argument. In that case, a state court judge who had won a hotly contested election dismissed a number of bailiffs on the day he was sworn in. *Id.* at 418. The bailiffs brought suit, alleging that they were discharged because of their political activities in opposition to the judge. *Id.* After a trial, the district court found that the bailiffs' dismissal was motivated politically, but held that the plaintiffs were "policy making or confidential" employees within the recognized exception to the First Amendment prohibition against making politically motivated patronage discharges. *Id.* The court gave several reasons for that conclusion, including the fact that the bailiffs are viewed as the judge's representatives to the public and must have the complete confidence of the judge to avoid ethical problems. *Id.* The Seventh Circuit found no reason to disturb the finding that the bailiffs' dismissal was motivated politically, but instead examined whether the bailiffs were policymaking or confidential employees subject to patronage discharge. *Id.* The Seventh Circuit remanded the case, finding that it was impossible

to conclude that the bailiffs were confidential employees based on the record or as a matter of law. *Id.* at 420-21. Specifically, the court ordered a trial limited solely to the issue of the closeness of the relationship between the judge and bailiffs to determine if they did, in fact, fall into the narrow exception. *Id.* at 423-24.

Unlike *Meeks*, which was the appeal of a trial verdict, before this Court is a Motion to Dismiss. No facts have yet been developed as to the closeness of the relationship between Security Specialists and those for which they provide security. The Plaintiffs' allegation that they provided security to the Mayor and other dignitaries, alone, is insufficient for this Court to determine that Plaintiffs cannot state a § 1983 claim. Defendants' Motion to Dismiss the § 1983 claim is denied.

### 3.  *Count III - § 1981 (Individual Defendants)*

To state a reverse discrimination claim under § 1981, a plaintiff must allege that (1) the defendants intended to discriminate on the basis of race; (2) the defendants' activities concern the making, performance, modification, termination, conditions or benefits of a contract; and (3) that there are background circumstances sufficient "to demonstrate that the particular employer has reason or inclination to discriminate invidiously against whites or . . . that there is something fishy about the facts at hand." *Graham v. Village of Dolton*, No. 10 C

1562, 2011 U.S. Dist. LEXIS 1530 (N.D. Ill. Jan. 6, 2011). At the motion to dismiss stage, a complaint "need not allege facts in support of each element, and it is sufficient if it alleges that the employee was discriminated against because of his race." *Huon v. Johnson & Bell, Ltd.,* No. 09 CV 7877, 2012 U.S. Dist. LEXIS 74176 at *18 (N.D. Ill. May 23, 2012).

Plaintiffs' Second Amended Complaint meets these pleading requirements. They allege they are Caucasian or Hispanic, and that their supervisors, Hillard and Thompson, are African-American. Sec. Am. Compl. ¶¶ 7-17, 19-20. They claim that the Individual Defendants "violated Plaintiffs' rights in violation of 42 U.S.C. § 1981 when they demoted the Plaintiffs based on their race." *Id.* ¶ 103. Plaintiffs claim that the Defendants had knowledge of Plaintiffs' race at the time they were demoted and were aware at that time of similarly situated African-American Security Specialists who had less seniority and qualifications. *Id.* ¶¶ 76, 77. Plaintiffs claim that Individual Defendants did not demote any African-American Security Specialists at the time the Plaintiffs were demoted, despite the fact Plaintiffs had greater seniority and stronger performance records than the African-American Security Specialists. *Id.* ¶¶ 43, 65, 78. Indeed, the Second Amended Complaint alleges that Plaintiff Pigott asked Thompson what factors Thompson would use to determine which officers stayed on as Security Specialists. *Id.* ¶ 44. Allegedly, Thompson responded

- 17 -

"the color of your skin is your sin." *Id.* Plaintiffs also allege that Hillard made statements confirming his involvement in the selection and replacement of Security Specialists. *Id.* ¶¶ 59-60.

While Plaintiffs did not state explicitly in their Second Amended Complaint that the Individual Defendants' discriminatory actions involved a contract, they pled enough detail to make it clear their employment contract with the City was affected by the discriminatory conduct. Specifically, Plaintiffs allege that they were all members of the Fraternal Order of Police, Chicago Lodge 7 ("FOP 7"), and that the terms of Plaintiffs' employment with the City are outlined in a collective bargaining agreement negotiated between FOP 7 and the City. Sec. Am. Compl. ¶ 63. Plaintiffs allege that the Defendants violated this agreement when they demoted them and not African-American Security Specialists with less seniority or poorer performance records. *Id.* ¶¶ 64-66. These allegations are sufficient to allege that the discriminatory actions concern a contract. *See Reyes v. N. Park Univ.*, No. 11 C 8585, 2012 U.S. Dist. LEXIS 182096 at *10 (N.D. Ill. Dec. 27, 2012).

Plaintiffs have thus pled a claim of reverse discrimination against Hillard and Thompson. Defendants' Motion to Dismiss Count III is thus denied.

- 18 -

### 4. Count IV – Title VII (City of Chicago)

Plaintiffs assert Title VII claims against the City for race discrimination. Defendants argue that all of Plaintiffs' Title VII claims are time barred, as they failed to file a timely charge with the EEOC. In Illinois, a complainant must file a charge with the Equal Employment Opportunity Commission ("EEOC") within the 300-day time period after the alleged discriminatory conduct. *Payne v. Abbott Lab.,* 999 F.Supp. 1145, 1149 (N.D. Ill. 1998); 42 U.S.C. § 2000e-5(e). Eight of the Plaintiffs admit that their charges of discrimination were received more than 300 days after their demotions, and Defendants claim the other three failed to meet the deadline, as well. Plaintiffs respond that the continuing violation doctrine saves their claims because the demotions were part of a covert continuing practice of demoting Security Specialists based on their race. Plaintiffs claim they did not know about this covert effort to demote Security Specialists based on race until Nolan, Olson and Roman received their official demotion notice on October 21, 2011. Plaintiffs thus argue that the October 21, 2011 notices, which fell within the 300-day window, is the last discriminatory act and is linked to the other demotions which fall outside of the window. The continuing violation theory, "allows a plaintiff to reach back to get relief for an act of discrimination that occurred outside the statute of limitations by linking it as one continuous act with a discriminatory act that

took place within the limitations period." *Place v. Abbott Labs.,* 215 F.3d 803, 807 (7th Cir. 2000). Defendants respond that demotions are discrete discriminatory acts to which the continuing violation theory does not apply. *See id.* at 808.

Regardless of whether the demotions were viewed as discrete acts or part of a larger continuing violation, it is not clear from the Second Amended Complaint when the Plaintiffs knew or should have known that their demotions were discriminatory. As stated earlier with respect to the Defendants' argument that some of Plaintiffs' *Shakman* claims should be dismissed on statute of limitations grounds, Plaintiffs have not alleged in their Complaint when they believed the demotions were motivated racially. And it is not yet clear from their Complaint when they should have known.

If viewed as discrete discriminatory acts, as Defendants argue, the 300-day filing deadline is tolled until the time when facts that would support a charge of discrimination were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff. *Perera v. Flexonics, Inc.,* 727 F.Supp. 406, 412 (N.D. Ill. 1989). Based solely on the Complaint, it is not clear when the Plaintiffs were aware of the facts necessary to support a charge of discrimination.

Similarly, even if the demotions were viewed under a continuing violation theory that they were part of a covert effort to demote Security Specialists based on race, the lack of a

statement in the Complaint that Plaintiffs felt, at the time, that their demotions were discriminatory is enough to save Plaintiffs' claims from a motion to dismiss. *See Adusumilli v. Loyola Univ.*, No. 97 C 8188, 1999 U.S. Dist. LEXIS 17229 at *11-12 (N.D. Ill. Sept. 30, 1999) (denying a defendant's motion to dismiss a plaintiff's Title VII claim under a continuing violation theory because "[w]ithout some clear statement in the complaint, on a motion to dismiss, the court is reluctant to find that [plaintiff] knew or should have known that the acts of which she complains were discriminatory at the time they occurred").

### 5. Relief Sought

Defendants argue that some of the relief Plaintiffs request is inappropriate and should be stricken. Defendants argue specifically that Plaintiffs cannot recover liquidated damages or equitable relief from the Individual Defendants, which Plaintiffs do not dispute. As such, to the extent the Second Amended Complaint seeks such relief from Individual Defendants, those requests are struck. Defendants also claim that Plaintiffs' jury demand is improper as to their *Shakman* claim. It is unclear why Defendants make this assertion. Plaintiffs are not requesting a jury demand under *Shakman*. While *Shakman* claims may confer no right to a jury trial, Plaintiffs' other claims may be tried before a jury. *See Smith v. Chicago*, 820 F.2d 916, 918 (7th Cir. 1987).

For the above reasons, Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint is denied.

## B. Plaintiffs' Motion to Compel (ECF No. 52)

On November 29, 2012, the parties came before the Court on Plaintiffs' Motion to Amend their Complaint. During that hearing, Plaintiffs' counsel requested that they be allowed to initiate discovery because "there are currently unknown defendants, and so we'd like to at least be able to initiate written discovery so that we can ascertain the identities of some of the currently unknown individuals." 11/29/12 Hearing Tr. at 3. Based on Plaintiffs' representation that there may be some additional decision-makers who could be liable under their § 1981 and § 1983 claims, the Court allowed the parties to proceed with written discovery. *Id.* at 4.

On December 14, 2012, Plaintiffs served extensive discovery on Defendants. On January 14, 2013, Defendants filed for a Protective Order, seeking to limit Plaintiffs' discovery to the identities of potential unknown Defendants. On January 17, 2012, the Court granted the Motion in part, only requiring Defendants to respond to Plaintiffs' interrogatories and allowing Defendants to withhold all other responses until after it ruled on Defendants' Motion to Dismiss. *See* 1/17/13 Order, ECF No. 38. Defendants received a subsequent extension of time to respond to the interrogatories. Defendants have now provided responses, revised responses and amended responses. Plaintiffs were still not satisfied with some

- 22 -

of the answers.  The parties conducted a Rule 37(a)(1) conference on February 22, 2013, but much to the disappointment of the Court, were unable to work out their differences.

Plaintiffs have now filed a Motion to Compel.  Plaintiffs claim that, contrary to this Court's November 29, 2012 ruling, Defendants failed to provide complete interrogatory responses.  In addition, Plaintiffs claim that Defendants failed to provide a privilege log with their interrogatory responses.

Generally, parties can obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. FED. R. CIV. P. 26(b)(1).  Courts have broad discretion in ruling on motions to compel.  *Gile v. United Airlines, Inc.,* 95 F.3d 492, 495-496 (7th Cir. 1996).  When ruling on a motion to compel, the Court must "independently determine the proper course of discovery based on the arguments of the parties."  *Id.* at 496.

### 1. *Local Rule 37.2*

The Court first notes that Plaintiffs are not in compliance with Local Rule 37.2, which requires that all motions for discovery be accompanied by a statement providing details regarding the parties' attempts to confer in good faith over the dispute.  *See* N.D. Ill. L.R. 37.2; *see also* FED. R. CIV. P. 37(a)(1) (requiring certification that the movant has in good faith conferred or attempted to confer in an effort to obtain the discovery without court action).  This rule encourages resolution of discovery

disputes without judicial involvement. *Biedrzycki v. Town of Cicero*, No. 04 C 3277, 2005 U.S. Dist. LEXIS 16423 at *6 (N.D. Ill. Aug. 8, 2005). While Plaintiffs claim that a Rule 37(a)(1) conference occurred on February 22, 2013, they fail to provide necessary information required by this rule. Given the mandatory language of Local Rule 37.2, the Court could deny Plaintiff's motion on this basis alone. *Id.* at *7. Despite Plaintiffs' failure to meet the requirements of the rule, it appears that the parties did engage in some meaningful discussions. As such, the Court will address the motion. The parties are on notice, however, that failure to comply with the Local Rule 37.2 for future motions will result in the motion being dismissed without consideration.

## 2. Privilege Log

Plaintiffs' first complaint as to Defendants' interrogatory responses is that Defendants asserted several privileges but did not provide a privilege log. Specifically, Defendants invoked the attorney client privilege, the attorney work product doctrine, the law enforcement investigative privilege and Section 2-56-110 of the Municipal Code of Chicago. Plaintiffs argue that any information withheld based on any privilege warrants a privilege log.

Defendants argue that in responding to the interrogatories, they are not obligated to provide a privilege log solely for oral communications between City attorneys and their clients. As to the specific privileges invoked, Defendants state that they included

the objections based on the law enforcement investigative privilege and Section 2-56-110 of the Municipal Code as protection in case the interrogatories sought confidential information regarding the investigations of the City's Inspector General's Office. Defendants state they included these objections "primarily as a precautionary measure, because two of the Interrogatories at issue seek 'the identity of all documents that relate or refer to the decision.'" Defs.' Resp. Mot. Compel at 8 n. 3. Defendants state that if the case was not dismissed, they would provide a privilege log of any documents it believed were privileged.

Now that the Motion to Dismiss has been denied, the stay on document discovery is lifted. Defendants will provide a privilege log for any documents it withholds on privilege grounds. However, while the Court recognizes that oral communications arguably fall under the Rule 26 privilege log requirement, it is also aware of the problems associated with producing a privilege log for oral communications when responding to interrogatories. As one sister court explained:

> [f]or the most part, privilege logs filed with interrogatory responses are problematic. Unlike the situation for responses to document requests, which identify discrete and tangible documents as privileged, preparing a privilege log for verbal conversations attempting to parcel out what is privilege, or not, is generally uninformative and logistically awkward.

*Johnson v. Couturier,* 261 F.R.D. 188, 191 n.5 (E.D. Cal. 2009) (declining to sanction party that did not prepare privilege log for

- 25 -

verbal communications in connection with interrogatory responses). In this case, the Court agrees. Defendants need not provide a privilege log with their interrogatory responses for oral communications.

### 3.   The Interrogatory Responses

Plaintiffs served each Defendant with four interrogatories. However, almost all of them have numerous subparts. Plaintiffs complain that Defendants' responses to some of the subparts are incomplete. Defendants claim the interrogatories are overbroad, burdensome, and vague, but claim they have provided complete responses. The Court has reviewed the interrogatories, and most of the responses (or proposed amendments to the responses) appear complete. At the outset, however, the Court is disappointed in all parties at their handling of this dispute. Many of Plaintiffs' interrogatories are overbroad or vague, and greater measures to clarify and narrow the requests should have been made. Conversely, it is clear that in several cases Defendants made no attempt to answer interrogatories to which they objected, when reasonable attempts could have been made to provide responses.

The Court will not attempt to address specifically all 39 interrogatory subparts Plaintiffs claim were answered insufficiently. However, it will briefly address those it finds require further response.

a. *Interrogatories Requiring Additional Responses*

i. *The City's Interrogatory Responses*

In Interrogatory 2(a), Plaintiffs request "each and every reason the Defendant removed each of the Plaintiffs from their position of Security Specialist." Pls.' Mot. to Compel Ex. B, ECF No. 52-1 PageID #966. Defendants respond that Hillard asked Thompson which Security Specialists should remain in Unit 542, and provided Thompson the qualities he believed such individuals should possess. Thompson identified himself and eight Security Specialists. During the Rule 37 conference, the City offered to clarify its answer "to make it clear that Hillard determined the first eight Plaintiffs were reassigned because Hillard determined, following his review, that they did not have the qualities that each police officer assigned to protect the Mayor and his family should possess." Defs.' Resp. to Pls.' Mot. Compel at 12. Plaintiffs refused this amendment, and in their Motion demand that Defendants "identify and explain any 'qualities' relied upon in making such decision." Pls.' Mot. to Compel, ECF No. 52 at PageID #954.

Defendants current answer is unsatisfactory, specifically because it says why individuals were retained but not why the Plaintiffs were removed. Their proposed amended answer that they were removed because they did not possess the attributes Hillard valued, would be satisfactory and Defendants should amend their

response accordingly.  Plaintiffs demand that Defendants identify and explain these "qualities" is a follow up question appropriate for another interrogatory or a deposition.

Interrogatory 3 requests extensive information regarding individuals selected to work as Security Specialists in the year before Mayor Emanuel was elected.  This includes non-party individuals who were hired during that time period.  Plaintiffs state that such information is relevant because:

> it relates directly to the hiring process followed during the period of time immediately before the election of the City's new Mayor.  Thus, the information sought will provide a useful comparison of hiring practices before and after the election – information that is directly relevant to Plaintiff's claims that they were demoted under suspicious circumstances suggesting impermissible political and/or racial motivations.

*Id.,* ECF No. 52, PageID #947-48.

The Court questions how material such information is to Plaintiffs' claims.  They are claiming they were demoted and replaced because of their political affiliation and race.  For those claims, Plaintiffs need not show that the hiring policies changed from one year to the next, but that race and political affiliation were considered improperly in their evaluation and demotion.  Compounding the problem with this interrogatory is that is seeks information that may infringe on the privacy interests of non-parties.  While it is true that no privilege exists to protect personnel files, courts recognize that such information is sensitive, and that they should weigh the value of the information

sought against the burden of providing it. As one court in this Circuit explained:

> district courts have broad discretion to limit a request for the discovery of personnel files, in order to prevent the dissemination of personal or confidential information about employees. The court should consider "the totality of the circumstances, weighing the value of the material sought against the burden of providing it," and taking in account society's interest in furthering "the truth-seeking function" in the particular case before it.

*Craig v. Corizon, Inc.,* No. 11-CV-1191-JMS-DKL, 2012 U.S. Dist. LEXIS 53712 at *6-7 (N.D. Ind. Apr. 17, 2012) (quoting *Brunker v. Schwan's Home Serv., Inc.,* 583 F.3d 1004, 1010 (7th Cir. 2009)).

In responding to Interrogatory 3, Plaintiffs identified four individuals who were hired the year before Mayor Emanuel took office. Two of those individuals are Plaintiffs in this action, and two are not. After weighing the materiality of the information sought against the potential burden on the non-parties, the Court sees no reason why information related to the two non-party officers is necessary. Defendants should respond to paragraphs 3(e), 3(f) and 3(I) with respect to Plaintiffs Rodriguez and Soto. Plaintiffs will thus receive the type of information they are seeking without infringing on the privacy of the two non-party witnesses. Defendants need not provide a supplemental response to 3(g), however, since Rodriguez and Soto should possess such information.

In Interrogatory 4(d), with respect to the Security Specialists selected after January 1, 2011, Plaintiffs seek "the

identity by name, title, and race of all persons who had any impact on and/or took any part in the decision." Pls.' Mot. to Compel, Ex. B, ECF No. 52-1, PageID #970. The request is overbroad. However, Defendants should at least respond with any individuals whose input or involvement impacted significantly the selection of Security Specialists after January 1, 2011.

### ii. *Hillard's Interrogatory Responses*

Plaintiffs claim that some of Hillard's Interrogatory Responses are deficient. The Court agrees that Hillard needs to supplement his responses to answer completely 2(b), 2(c), 2(I), 3 and 4. Request 2(b) asks for Hillard to "identify all individuals that you consulted with regarding the decision to remove the Plaintiffs from their positions as Security Specialists by name, race and last known address." Pls.' Mot. to Compel, Ex. B, ECF No. 52-2, PageID #980. Plaintiffs believe Hillard's response is deficient, because a *Chicago Tribune* article indicated that Hillard spoke to security experts and the U.S. Secret Service in making the Security Specialist decisions. However, Hillard clarified that he spoke to the U.S. Secret Service regarding general information about criteria for the Mayor's security detail, and not the decision to remove the Plaintiffs from their positions. Hillard offers to supplement his response to state that he consulted with Special Agent-In-Charge John Gulickson, and verify that they did not discuss specific individuals who might be assigned or

reassigned from the security detail. The Court finds this proposed amendment satisfactory, and Hillard should thus supplement his response.

In Interrogatory 2(c), Plaintiffs request that Hillard describe conversations he had with individuals regarding removing Plaintiffs from their Security Services positions. Hillard claims this interrogatory was overbroad and burdensome, and made little attempt to answer it. The Court disagrees. Hillard should respond to this interrogatory. The Court sees nothing overbroad or burdensome about providing the dates of such discussions, the individuals present, and the nature of the discussions.

With respect to 2(I), Plaintiff seeks the identity of all documents that relate or refer to this decision. Defendants will now be able to identify such documents as discovery proceeds.

In Interrogatory 3 (and its fourteen subparts), Plaintiffs seek to know whether Hillard participated in "the process of selecting officers to work as Security Specialists." Pls.' Mot. to Compel, ECF No. 52-2, PageID #982. Hillard responds that he did not participate in selecting Security Specialists during that time and had no information responsive to this interrogatory. In his brief, he admits that as the Interim Superintendent from March 2 to May 13, 2011, he was involved "only in the decision as to which officers would remain in and which officers would be assigned or reassigned from the mayoral security detail in May 2011." Defs.'

Resp. to Pls.' Mot. to Compel at 19. Hillard argues that Plaintiffs misapprehend his role, as he was not involved in the appointment of new Security Specialists, which occurred in December 2011. But Interrogatory 3 does not ask if he was involved in their appointment, but rather in their selection. By Hillard's own admission, he was involved in selecting which officers continued to work as Security Specialists and which did not. As such, he needs to answer Interrogatory 3. His reading that the interrogatory is asking simply for whether he was involved in the appointment of Security Specialists is too narrow.

Plaintiffs argue that Hillard's response to Interrogatory 4, which asks Hillard to identify individuals not employed by the City of Chicago that Hillard consulted regarding the decision to remove or select Security Specialists, is incomplete. The Court finds Hillard's proposed supplement, which includes adding the name and title of the Secret Service agent with whom he consulted, to be sufficient. *See* Defs.' Resp. to Pls.' Mot. to Compel at 20.

### iii. Thompson's Interrogatory Responses

Plaintiffs seek to compel Thompson to respond to several subsections of their lengthy Interrogatory 3, which asks if Thompson participated in the process of selecting officers to work as Security Specialists after January 1, 2011. Plaintiffs seek specifically responses to 3(h), 3(I), 3(j), 3(m), 3(n) and 3(o). Thompson objects to these requests, often stating that they are

- 32 -

overbroad, vague or that they would invade the privacy rights of non-parties.

The Court disagrees for each of these. They do not appear overbroad or unduly burdensome, and they appear to seek relevant information. To the extent that information regarding private matters of third parties may be involved, Defendants should offer an appropriate protective order for the Court to enter to protect such information. Thompson claims that 3(m) and 3(n) are beyond his knowledge, so he should simply say so in his supplemental response instead of claiming that they are overly broad and unduly burdensome.

> b. *Interrogatories Requiring No Further Responses*

Plaintiffs' request to compel responses to any interrogatories not discussed above are denied, as the Court finds either that Defendants' response was sufficient or that Plaintiffs' request was too flawed to require further response.

## III.  <u>CONCLUSION</u>

For the reasons stated herein, the Defendants' Motion to Dismiss (ECF No.35) is denied. Plaintiff's Motion to Compel (ECF No.52) is granted in part and denied in part. In light of the extensions already provided to Defendants in responding to these interrogatories, Defendants have until Thursday, May 9, 2013 to supplement their interrogatory responses and file a protective order with regard to any third-party confidential information it

- 33 -

seeks to protect.  The only exception to this May 9, 2013 deadline is for any request that seek the identification of documents.  Such interrogatories can be more fully answered as document discovery proceeds.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: 5/1/2013